UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**SCANNED**

Case No. 07-61136-CIV-COHN/SELTZER

JON KRUTCHIK,

      Plaintiff,

v.

CHASE BANK USA, N.A.,
a foreign corporation,

      Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO STAY AND COMPEL ARBITRATION

**THIS CAUSE** is before the Court upon Defendant Chase Bank USA, N.A.'s Motion to Stay and Compel Arbitration [DE 44]. The Court has considered the Motion, Plaintiff's Response [DE 45], Defendant's Reply [DE 46], and the record, and is otherwise fully advised in the premises.

    Plaintiff Jon Krutchik brought this lawsuit against Defendant JP Morgan Chase & Company (later substituting Defendant Chase Bank USA, N.A.), alleging that the Defendant wrongfully denied his dispute of several charges made to his credit card account by an unauthorized third party and was wrongfully attempting to collect on these charges from him. Defendant removed the action to federal court, and subsequently filed a Motion to Stay and Compel Arbitration. Plaintiff moved to substitute the proper Defendant, Chase Bank USA, as a party, and Chase subsequently filed its own Motion to Stay and Compel Arbitration, which this Court now considers.

I.      **BACKGROUND FACTS**

Plaintiff Krutchik opened a credit card account with Citibank in 1989, either by submitting a written credit card application or by applying over the telephone. (Affidavit of Jon Krutchik, [DE 14] ¶¶ 3-4.) Mr Krutchik claims he did not receive a cardholder agreement after opening the account. (Id. at ¶ 5.) The account was subsequently taken over by Bank One Corporation, then Chase Bank USA, and Mr. Krutchik was notified each time, but claims he did not receive a new cardholder agreement at any point ( Id. at ¶¶ 6 - 9.) Throughout the time from the opening of the account until the events leading to this law suit, Mr. Krutchik used the account to make purchases. (Id. at ¶¶ 6,8,10.) Mr. Krutchik denies having ever received cardholder agreements from Citibank, Bank One, or Chase at any time. (Id. at ¶ 14.)

Defendant Chase Bank's records tell a different story. In affidavits submitted to the Court, Segment Senior Director Donna Barrett testified that the cardholder agreements were sent to Mr. Krutchik. Ms. Barrett states that in December 2003, Chase sent a new cardmember agreement to Mr. Krutchik including an arbitration provision. (Affidavit of Donna M. Barrett, [DE 12-2] ¶ 9.) This agreement was sent as part of a routine procedure by regular mail to the address listed in Chase's records, the same address to which periodic billing statements were sent. (Supplemental Affidavit of Donna M. Barrett, [DE 21] ¶ 3.) Chase routinely makes a note in a cardmember's computerized account records if mail is returned as undeliverable, or if a cardmember sends correspondence to the bank, but no such notes were found in Mr. Krutchik's account records. (Affidavit, [DE 12-2] ¶ 13.)

On or about April 25, 2005, Chase sent another amendment to the cardholder

2

agreement to Mr. Krutchik, which also included an arbitration provision. (Id. at ¶ 14.) This agreement was sent as part of a routine procedure by regular mail to the address listed in Chase's records, the same address to which periodic billing statements were sent. (Supplemental Affidavit, [DE 21] ¶ 4.) Chase routinely makes a note in a cardmember's computerized account records if mail is returned as undeliverable, or if a cardmember sends correspondence to the bank, but no such notes were found in Mr. Krutchik's account records. (Affidavit, [DE 12-2] ¶ 16.)

Each of the cardmember agreements included a section explaining the effective date of the changes, the procedure for rejecting the new terms, and the fact that any future use beyond the rejection deadline would be deemed to be an acceptance of the new terms. (Affidavit, [DE 12-2] ¶¶ 12, 15.) Mr. Krutchik's computerized account records contain no indication that he ever notified Chase of his refusal to accept the terms of the new cardmember agreements. (Id. at ¶¶ 13, 16.)

The most recent cardmember agreement, sent on April 25, 2005, contained an arbitration agreement that stated, in pertinent part:

> 3. **ARBITRATION:** The following replaces the section entitled **"ARBITRATION":**
> **ARBITRATION AGREEMENT:** PLEASE READ THIS AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN COURT SUCH AS THAT IN THE FORM O FA PRIVATE ATTORNEY GENERAL ACTION, NOR WILL YOU BE ABLE TO BRING ANY CLAIM IN ARBITRATION AS A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE, OR BE REPRESENTED IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. IN THE ABSENCE OF THIS

ARBITRATION AGREEMENT, YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY, AND/OR TO PARTICIPATE OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS AND OTHER REPRESENTATIVE ACTIONS).  OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION MAY BE MORE LIMITED.  EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED.

**Binding Arbitration.**  This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by and be enforceable under the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1-16 as it may be amended.  This Arbitration Agreement sets forth the circumstances and procedures under which claims (as defined below) may be resolved by arbitration instead of being litigated in court.

. . .

**Claims Covered.**  Either you or we may, without the other's consent, elect mandatory, binding arbitration of any claim, dispute or controversy by either you or us against the other, or against the employees, parents, subsidiaries, affiliates, beneficiaries, agents or assigns of the other, arising from or relating in any way to the Cardmember agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your Account ("Claim").  This Arbitration Agreement governs all Claims, whether such claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief.  Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement.  This Arbitration Agreement includes Claims that arose in the past, or arise in the present or the future.  As used in this Arbitration Agreement, the term Claim is to be given the broadest possible meaning.

Claims subject to arbitration include Claims that are made as counterclaims, cross claims, third party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any such Claims advanced in the lawsuit by any party or parties.

> As an exception to this Arbitration Agreement, you retain the right to pursue in a small claims court any Claim that is within that court's jurisdiction and proceeds on an individual basis . . .

(Cardmember Agreement, [DE 12-2] Exh. C.)

## II. APPLICABLE LEGAL STANDARDS AND ANALYSIS

The provisions of the FAA govern the arbitration provision in the Cardmember Agreement at issue in this case. Pursuant to the Federal Arbitration Act ("FAA"), a written arbitration provision in a "contract evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "thus establishes 'a federal policy favoring arbitration,' requiring that 'we rigorously enforce agreements to arbitrate.'" Shearson/American Express v. McMahon, 482 U.S. 220, 226 (1987) (*internal citations omitted*). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp. 460 U.S. 1, 24-25 (1983).

Plaintiff raises two arguments in opposition to Defendant's Motion to Compel Arbitration: 1) that he never accepted the Cardholder Agreement, and thus, the contract was never formed, and 2) that the Defendant has waived its right to arbitrate by proceeding in the instant litigation.

### A. Existence of Enforceable Contract

Plaintiff first challenges the validity of the arbitration provision in the Cardholder

Agreement. When considering "gateway issues," such as whether the parties have a valid and binding arbitration agreement, the Court may generally consider "'only issues relating to the making and performance of the agreement to arbitrate,' and not issues relating to the making of the contract generally." Battels v. Sears Nat'l Bank, 365 F. Supp. 2d 1205, 1211 (M.D. Ala. 2005) (*quoting* Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967)). However, an exception to this general rule exists for "cases where not merely the enforceability, but the initial formation or existence of a contract, including a disputed arbitration clause is legitimately called into question, and must be decided by the court." Rainbow Inv. v. Super 8 Motels, 973 F. Supp. 1387, 1390 (M.D. Ala. 1997). In this instance, because Plaintiff is challenging the initial formation or existence of the contract that includes the arbitration clause, this exception applies.

The Eleventh Circuit has provided guidance for those cases where, as here, there is no signed contract and one party denies the existence of an agreement. In Chastain v. The Robinson-Humphrey Co., the Eleventh Circuit explained the analysis as follows:

> Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration. Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract in general. Because the making of the arbitration agreement *itself* is rarely in issue when the parties have signed a contract containing an arbitration provision, the district court usually must compel arbitration immediately after one of the contractual parties so requests.
> The calculus changes when it is undisputed that the party seeking to avoid arbitration has not signed any contract requiring arbitration. In such a case, that party is challenging the very

6

> existence of *any* agreement, *including the existence of an agreement to arbitrate*. Under these circumstances, there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the Act. If a party has not signed an agreement containing arbitration language, such a party may not have agreed to submit grievances to arbitration at all. Therefore, before sending any such grievances to arbitration, *the district court itself* must first decide whether or not the non-signing party can nonetheless be bound by the contractual language.

957 F.2d 851, 854 (11th Cir. 1992).

In this case, the parties do not dispute that there is no signed contract requiring arbitration. Rather, Defendant argues that the Cardmember Agreement, which included a valid, written agreement to arbitrate, was mailed to Plaintiff and accepted through Plaintiff's continued use of the credit card. Plaintiff argues in response that he never received any of the Cardmember Agreements, and so did not assent to the terms therein, and, thus, no valid written agreement to arbitrate exists.

The Cardmember Agreement at issue in this case provided that Plaintiff would be bound by its terms if he evidenced his acceptance by continuing to use the credit card. The Agreement also provided a procedure through which Plaintiff could reject the new terms, if he so chose. The parties do not dispute that Plaintiff continued use of the credit card up until the events giving rise to this lawsuit. However, Plaintiff does dispute that he ever received the Cardmember Agreement. The law recognizes a rebuttable presumption that an item properly mailed was received by the addressee. Konst v. Fla. E. Coast Ry., 71 F.3d 850, 851 (11th Cir. 1996). The Affidavits of Ms. Donna Barrett, submitted by Defendant, show that the Cardmember Agreement in this case was sent to the same address to which Plaintiff's new credit cards and billing statements were sent, and that Plaintiff made payments in response to the billing statements. These

facts would tend to indicate that mail sent to Plaintiff at the address on file with Chase was received by him.

In his Affidavit, Plaintiff denies ever receiving any of the Cardmember Agreements. However, this Court finds Plaintiff's claim to be lacking in credibility, and concludes that the totality of the evidence establishes that the properly mailed Cardmember Agreements were received by the Plaintiff. "'To make a genuine issue entitling the [party seeking to avoid arbitration] to a trial by jury [on the arbitrability question], an unequivocal denial that the agreement had been made [is] needed, and some evidence should [be] produced to substantiate the denial.'" Chastain, 957 F.2d at 854. Plaintiff has provided the unequivocal denial, but has provided no evidence to substantiate it. Furthermore, other courts in this circuit have found that a plaintiff did receive a cardholder agreement, even where the plaintiff denies receiving it, based on the routine nature of the mailing and evidence that the agreements were mailed to the same address to which billing statements were also sent. See, e.g., Athon v. Direct Merchants Bank, 2007 WL 1100477, *4 (M.D. Ga. 2007). Thus, this Court concludes that Plaintiff has not overcome the presumption that the properly mailed Cardmember Agreement was received. Because the Cardmember Agreement is presumed to have been received, and Plaintiff failed to follow the specified procedure for rejecting the new terms and continued using the credit card, his actions constitute a legal acceptance of the terms contained within the Cardmember Agreement, including the arbitration provision, and the Agreement is binding on him.

**B.    *Waiver of Right to Arbitrate***

Plaintiff also argues that Defendant Chase's filing of a third party complaint

8

constitutes active participation in the lawsuit and a waiver of Chase's right to arbitrate. "A party may be deemed to have waived its right to arbitrate a dispute 'when a party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.'" Stone v. E.F. Hutton & Co., 898 F.2d 1542, 1543 (11th Cir. 1990) (*quoting* Miller Brewing Co. v. Fort Worth Distrib. Co., 781 F.2d 494, 497 (5th Cir. 1986)). The party arguing waiver of arbitration bears a heavy burden of proof, however, because of the federal policy in favor of arbitration. Id. Any doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration. Id.

Plaintiff contends that Defendant Chase waived its right to arbitration by filing a third party complaint against Ghazala Salam, the individual believed to have made the allegedly fraudulent charges on Plaintiff's account. Plaintiff argues that Chase had other options available to ensure compliance with the Court's Scheduling Order and need not have filed the third party complaint, "which constituted actively participating in the litigation." However, even if the Court accepts Plaintiff's assumption that the filing of the third party complaint can be attributed to Defendant Chase,[1] at no point in Plaintiff's Response does he assert that the filing of the third party complaint was to his detriment or prejudiced him in any way. Without even an allegation of prejudice, Plaintiff cannot meet his high burden of proof and establish waiver of Defendant's arbitration rights.

Furthermore, the Court finds that Defendant Chase has in no way acted inconsistently with its right to arbitrate. Immediately after filing its Answer to Plaintiff's

---

[1] The Third Party Complaint was filed by Defendant Chase's predecessor in this action, JP Morgan Chase, which was replaced as Defendant by Chase upon a Motion by the Plaintiff.

Complaint, the original Defendant JP Morgan Chase filed a Motion to Compel Arbitration [DE 9]. That Motion was mooted when Plaintiff filed a Motion to Substitute Parties, substituting in Defendant Chase for JP Morgan Chase. Defendant Chase then filed its own Motion to Compel Arbitration [DE 44] only ten days after this Court granted the substitution of parties, and sought to stay discovery pending the resolution of the motion. The Court finds nothing in these actions that would evidence a substantial invocation of the judicial process that has prejudiced the Plaintiff. Accordingly, the Court finds that Defendant Chase did not waive its right to arbitrate.

### III.  CONCLUSION

For the foregoing reasons, the Court concludes that the arbitration provision in the Cardmember Agreement is binding on Plaintiff Krutchik, and that Defendant Chase has not waived its right to arbitration. Plaintiff does not dispute that the current action falls within the scope of the arbitration provision. Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendant Chase Bank USA, N.A.'s Motion to Stay and Compel Arbitration [DE 44] is **GRANTED**. The parties are ordered to submit the claims presented in the instant action to arbitration.

2. Pursuant to the FAA, 9 U.S.C. § 3, this case is **STAYED** until such arbitration has been had in accordance with the terms of the agreement.

3. The parties are directed to file a status report with this Court upon the earliest of either 1) the completion of arbitration, or 2) August 1, 2008, to advise the Court regarding the status of the case.

4. Any pending motions are **DENIED as moot**. The Clerk of Court is directed to **CLOSE** this case for administrative purposes.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 23RD day of January, 2008.

_____
JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record